UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MATTHEW K. DOWNING, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 10-11138-JLT |
| | * | |
| GLOBE DIRECT LLC, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM

August 25, 2011

TAURO, J.

I.   Introduction

Matthew K. Downing ("Plaintiff") filed suit against Globe Direct LLC ("Defendant"), alleging a violation of federal driver privacy-protection laws.[1] Defendant has moved for judgment on the pleadings arguing, inter alia, that Plaintiff has failed to join Massachusetts, which is a necessary and indispensable party to this case. Presently at issue are Defendant's Motion for Judgment on the Pleadings [#34] and Plaintiff's Cross-Motion for Judgment on the Pleadings [#37]. For the following reasons, Defendant's Motion is ALLOWED IN PART, and Plaintiffs' Motion is DENIED IN PART.

II.   Background[2]

---

[1] Pls.' Am. Compl. ¶ 22–25 [#3].

[2] Because the issues analyzed here arise in the context of a motion for judgment on the pleadings, this court construes the facts in the light most favorable to Plaintiffs. See infra note 22 and accompanying text. Such a motion "implicates the pleadings as a whole," Curran v. Cousins, 509 F.3d 36, 43–44 (1st Cir. 2006) (internal citation omitted), and this court "may supplement the

On August 12, 2009, the Massachusetts Registry of Motor Vehicles ("RMV") entered into a contract with Defendant.[3] The contract required Defendant to (a) mail out registration renewal notices on the RMV's behalf and (b) solicit and insert advertising into the notices.[4] Pursuant to the contract, the RMV provided Defendant with the names and addresses of motor vehicle owners to whom Massachusetts wished to mail registration renewal notices.[5] An addendum to the contract required the RMV to approve "all prospective advertising."[6] Acting on Massachusetts's behalf, Defendant mailed the renewal notices along with advertising inserts.[7]

One person who received Defendant's mailing was Plaintiff, who is the owner of a 1998

---

facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice," id. at 44 (internal citation and quotation marks omitted).

[3] Ans. Class Action Compl., Ex. C [#6] (attaching "Additional Negotiated Terms and Conditions and Attachment to the Standard Contract Between the Commonwealth Registry of Motor Vehicles and Globe Direct For the Registration Renewal Printing and Mailing Program") [hereinafter Ans.]. The RMV had previously issued a Request for Response ("RFR") seeking proposals for contracts to mail re-registration forms on its behalf. Ans. ¶ 3 [#3]; id., Ex. A [#3]. The RFR required that the renewal notices sent by the selected vendor contain advertising inserts because the program was to be "funded by the solicitation and sale of commercial advertising by the contractor for insertion into the registry's renewal notice mailing." Ans., Ex. A, 6 [#3]. Massachusetts retained the right to approve all elements of any advertising, including the appropriateness of advertising, the products or services advertising, as well as the form, content, and position in the mail pieces. Ans., Ex. A, 15 [#3]. The RFR is considered part of the contract. Ans., Ex. C ¶ 4 [#3].

[4] Ans. ¶ 3 [#3]; id., Ex. A [#3]; id., Ex. C [#3].

[5] Class Action Compl. ¶ 3 [#1] [hereinafter Compl.]; Ans. ¶¶ 3, 18 [#3].

[6] Ans., Ex. C, at 16 [#3] ("All prospecting advertising shall be reviewed and approved by the Commonwealth before the Contractor may enter into an agreement for advertising with the advertiser.").

[7] Compl. ¶ 3 [#1]; Ans. ¶ 3 [#3].

2

Toyota.[8]  Plaintiff, in registering his 1998 Toyota with the RMV, provided the RMV with his name and address.[9]  Plaintiff claims that millions of others have also similarly received such mailings from Defendant.[10]

The Drivers Privacy Protection Act ("DPPA"), Plaintiff claims, prohibits the use of personal information, including the names and addresses of motor vehicle owners, for any purpose other than the specific "permitted uses" set forth in §§ 2721(b)(1)–(14) of the DPPA.[11]  The DPPA only permits the use of personal information for surveys, marketing, or solicitation if the Commonwealth has obtained the express consent of the person to whom the information pertains.[12]

Plaintiff, however, has never given the RMV his consent for the use of his DPPA-protected personal information.[13]

The contract between Defendant and Massachusetts provided that the contract would terminate if there was a "finding of any violation" of the DPPA or "any other federal or Massachusetts state law . . . concerning the protection and privacy of personal information."[14]

---

[8] Compl. ¶ 10 [#1].

[9] Compl. ¶ 10 [#1].

[10] Compl. ¶ 13 [#1].

[11] Class Action Comp. ¶ 3 [#1].

[12] Compl. ¶ 11 [#1].

[13] Compl. ¶ 12 [#1].

[14] Ans., Ex. C ¶ 16 [#3].

On September 18, 2009, Plaintiff sued Defendant, but not Massachusetts.[15] Plaintiff brought a putative class action on behalf of himself and all similarly situated non-consenting motor vehicle registrants whose names and addresses have been obtained by Defendant from the RMV and whose names and addresses were used by Defendant to mail to them commercial advertisements.[16] Plaintiff also brought this action on behalf of all non-consenting persons whose vehicles are registered with the RMV and whose personal information will be obtained by Defendant from the RMV and used by Defendants to mail them commercial advertisements, unless Defendant is enjoined from doing so.[17] Plaintiff pleads on information and belief that only a de minimis number of these people, if any, have given the RMV their written consent pursuant to the DPPA.[18]

On October 8, 2010, Defendant filed a Motion for Judgment on the Pleadings [#34], arguing, among other things, that Massachusetts was a necessary party to this case. On November 12, 2010, Plaintiff opposed Defendant's Motion through his own Cross-Motion for Judgment on the Pleadings [#37].

III.   Discussion

A party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial.[19] The standard for evaluating a Rule 12(c) motion for judgment on the

---

[15] See Compl. [#1].

[16] Compl. ¶ 19–21 [#1].

[17] Comp. ¶ 19–21 [#1].

[18] Compl. ¶ 14 [#1].

[19] Fed. R. Civ. P. 12(c).

pleadings is the same as the standard for deciding a Rule 12(b)(6) motion to dismiss.[20] To survive a motion for judgment on the pleadings, a complaint must allege sufficient facts to "'raise a right to relief above the speculative level'" based upon an "'assumption that all the allegations contained in the complaint are true . . . .'"[21] A court must view "the facts contained in the pleadings in the light most favorable to the" nonmoving party and draw all reasonable inferences in that party's favor.[22]

### A. Defendant's Motion for Judgment on the Pleadings

Defendant contends that Massachusetts is a necessary and indispensable party to this action, without whom Plaintiff's action must be dismissed.[23] Plaintiff replies that Massachusetts is no such thing and that equity and good conscience do not permit dismissal.[24]

#### 1. Legal Standard for Rule 19 Dismissal

Federal Rule of Civil Procedure Rule 19 establishes a two-part analysis to determine

---

[20] See, e.g., Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 49 & n.3 (1st Cir. 2009) (internal citations omitted).

[21] Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see also Citibank Global Mkts., Inc. v. Santana, 573 F.3d 17, 23 (1st Cir. 2009) (internal citations omitted); Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008) (explaining that a motion to dismiss will be granted "unless the facts, evaluated in that plaintiff-friendly manner, contain enough meat to support a reasonable expectation that an actionable claim may exist" (internal citations omitted)).

[22] Perez-Acevedo, 520 F.3d at 29 (internal citations and quotation marks omitted).

[23] Mem. Supp. GlobeDirect's Mot. J. Pleadings, 15–20 [#35].

[24] Mem. Supp. Pl.'s Cross-Mot. J. Pleadings & Opp'n Def.'s Mot. J Pleadings, 22–24 [#39] [hereinafter Pl.'s Cross-Mot.].

whether a court should dismiss an action for failure to join a party.[25] First, Rule 19(a) requires joinder of "necessary" parties when feasible.[26] A party is "necessary" if (1) a "court cannot accord complete relief" in that party's absence;[27] or (2) the party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the [party]'s absence may . . . impair or impede the [party]'s ability to protect the interest," or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."[28]

Second, if a litigant is "necessary" under Rule 19(a)—"required to be joined if feasible"—but cannot be joined,[29] then the court must determine whether "in equity and good conscience" the action should proceed among the parties or be dismissed because the litigant is "indispensable" under Rule 19(b).[30] Whether a litigant is dispensable is determined by the four factors of Rule 19(b):

---

[25] Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 25 (1st Cir. 2010) (internal citations omitted).

[26] Jimenez, 597 F.3d at 25 (explaining that the term "necessary" is a vestige of a superseded version of Rule 19 and a term of art, signifying "desirability rather than actual necessity [because parties] are not truly necessary in the vernacular sense of the word 'unless and until they satisfy the terms of Rule 19(b)'" (quoting Confederated Tribes of Chehalis Indian Reservation v. Lujan, 928 F.3d 1496, 1501 n.1 (9th Cir. 1991) (O'Scannlain, J., concurring in part and dissenting in part))).

[27] Fed. R. Civ. P. 19(a)(1)(A).

[28] Id. 19(a)(1)(B).

[29] Fed. R. Civ. P. 19(b).

[30] Jimenez, 597 F.3d at 25 ("The critical question in the Rule 19(b) context is whether in equity and good conscience the action may proceed in [the necessary party]'s absence." (alteration in original) (internal citations and quotation marks omitted)); Fed. R. Civ. P. 19(b).

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice can be lessened or avoided by:
> > (A) protective provisions in the judgment;
> > (B) shaping the relief; or
> > (C) other measures;
> (3) whether a judgment rendered in the person's absence will be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.[31]

As a general, well-settled proposition, courts have repeated that a "'party to a contract which is the subject of the litigation is a necessary party.'"[32] The First Circuit has affirmed that all parties to a contract must be joined, at least in the case of joint obligees (those to whom a duty is owed).[33] Additionally, a court should "keep in mind the policies that underlie Rule 19, 'including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in

---

[31] Fed. R. Civ. P. 19(b).

[32] Blacksmith Invs., LLC v. Cives Steel Co., Inc., 228 F.R.D. 66, 74 (D. Mass. 2005) (quoting Sever v. Glickman, 298 F. Supp. 267 (D. Conn. 2004)); see also Leonard v. Humacao Glass & Aluminum Contractors Inc., No. 03-2250 (DRD), 2006 U.S. Dist. LEXIS 13680, at *23 (D.P.R. 2006) ("[G]enerally, when a breach of contract is asserted, all parties to the contract are necessary parties." (citing Acton Co., Inc. of Mass. v. Bachman Foods, Inc., 668 F.2d 76, 78–79 (1st Cir. 1982))); Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 184 F. Supp. 2d 55, 78 (D. Mass. 2001) (collecting cases and noting certain rules of thumb, including that "an action to set aside a contract requires the joinder of all parties to the contract." (quoting 4 Moore's Federal Practice § 19.06[1] (3d ed. 2001))); EEOC v. Peabody W. Coal Co., 610 F.3d 1070, 1082 (9th Cir. 2010) ("[N]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." (internal citations and quotation marks omitted)).

[33] Rivera Siaca v. DCC Operating, Inc. (In re Olympic Mills Corp.), 333 B.R. 540, 552 (1st Cir. 2005) (explaining that many courts have concluded that joint obligors, persons who owe a duty of performance, are not indispensable (internal citations omitted)).

7

avoiding the possible prejudicial effect of deciding the case without them.'"[34]

### 2. Massachusetts is a Necessary Party and Cannot Be Joined

Massachusetts is a necessary party under Rule 19(a). Massachusetts's ability to protect its interest would be impaired "as a practical matter" under Rule 19(a)(B)(i).[35] First, Massachusetts is an obligee under its contract with Defendant. The contract provides various obligations that Defendant shall perform for the benefit of Massachusetts.[36] Massachusetts therefore has, as a practical matter, an interest in Defendant's performance of its obligations. But any decision by this court would effectively invalidate Massachusetts's contract.[37]

Second, this litigation would automatically terminate Massachusetts's contract.[38] This highlights further that the Commonwealth's interest would be impaired by a termination here.[39] That is, even if during negotiation Massachusetts could have foreseen that litigation may cause the

---

[34] Picciotto v. Const'l Cas. Co., 512 F.3d 9, 16 (1st Cir. 2008) (quoting Acton, 668 F.2d at 78).

[35] Fed. R. Civ. P. 19(a)(1)(B)(i).

[36] See, e.g., Ans., Ex. C ¶ 7 [#3] (listing responsibilities of Defendant); Ans., Ex. C, 15 [#3] (including attachment to contract providing further requirements of Defendant).

[37] See, e.g., Arcidi v. Nat'l Ass'n of Gov't Emps., Inc., 447 Mass. 616, 619–620 (2006) (explaining that a contract that violates state law is unenforceable (internal citations omitted)).

[38] See supra note 14 and accompanying text.

[39] Defendant instead argues that Massachusetts is not necessary because it is protected by an adverse decision by the contract providing for automatic termination if it is judged to violate any federal or Massachusetts privacy-protection laws. But this argument is unconvincing for a few reasons. First, this provision is irrelevant to Massachusetts's position if this court were to judge whether the contract substantively violates privacy-protection laws. That is, even without the clause, the contract would still be nullified. See supra note 37 and accompanying text. Second, Defendant points to no case law indicating that this termination clause makes Massachusetts no longer a necessary party.

contract to be terminated, that does not alter the fact that "automatic termination renders the [contract] less valuable" to Massachusetts and impairs its interests.[40]

Joinder of Massachusetts is not feasible here because the Commonwealth enjoys sovereign immunity. The Eleventh Amendment prevents private individuals from suing non-consenting states in federal court.[41] This immunity also applies to "arms" of the state,[42] including the RMV.[43]

Congress, moreover, has not abrogated the States' sovereign immunity with respect to private DPPA lawsuits. Although Congress has the power to abrogate that Eleventh Amendment immunity, such power may only be validly exercised if Congress both (a) "'unequivocally intends to do so'" and (b) "'act(s) pursuant to a valid grant of constitutional authority,'" such as the

---

[40] Am. Greyhound Racing, Inc. v. Hull, 305 F.3d 1015, 1025 (9th Cir. 2002) ("Before this litigation, the tribes had a right to renewal if a Governor was willing to leave the compacts in effect; after the litigation, termination was the only option."). Moreover, insofar as a judgment rendered in Massachusetts's absence would impair its "sovereign capacity to negotiate contracts," this would also undermine the Commonwealth's ability govern "effectively and efficiently." Dawavendewa v. Salt River Project Agric. Improvement & Power Dist., 276 F.3d 1150, 1155 (9th Cir. 2002) (internal citations omitted).

[41] Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); see U.S. Const. Amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another States, or by Citizens or Subjects of any Foreign State.").

[42] See PRASA v. M&E, 506 U.S. 139, 146–47 (1993); Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curium). See generally De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 121 (1st Cir. 1991) (discussing coverage of the Eleventh Amendment).

[43] See Azubuko v. Boston Mun. Court, No. 09-10152-DPW, 2010 U.S. Dist. LEXIS 69113, at *4–5 (D. Mass. July 12, 2010).

authority granted by Section 5 of the Fourteen Amendment.[44] That is not the case with the DPPA, under which only "person[s]" are subject to private lawsuits,[45] and "person" is defined to "not include a State or agency thereof."[46] The DPPA, in fact, explicitly "prevents private actions against states . . . ."[47]

### 3. Massachusetts is an Indispensable Party

The four Rule 19(b) factors together reveal that Massachusetts is an indispensable party.

The first factor—the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties—weighs heavily in favor of dismissal. The first factor of prejudice, "insofar as it focuses on the absent party, largely duplicates the consideration that made a party necessary under Rule 19(a): a protectible interest that will be impaired or impeded by the party's absence."[48] Accordingly, much as Massachusetts is a necessary party because its interests in the contract would be impaired by this lawsuit, a judgment without Massachusetts would be prejudicial to it because the judgment would vitiate Massachusetts's contract.[49]

---

[44] Garrett, 531 U.S. at 363 (quoting Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000)).

[45] 18 U.S.C. § 2724.

[46] 18 U.S.C. § 2725(2).

[47] Travis v. Reno, 163 F.3d 1000, 1006 (7th Cir. 1998). There is, moreover, no indication that Massachusetts has consented to suit or waived its sovereign immunity in any fashion. See Arecibo Cmty. Health Care, Inc. v. Puerto Rico, 270 F.3d 17, 24 (1st Cir. 2004) (explaining three ways that a state may waive its Eleventh Amendment immunity).

[48] Hull, 305 F.3d at 1024 (internal citations omitted); accord Picciotto, 512 F.3d at 18 (noting and not disapproving of a district court's first factor analysis as a reiteration of its Rule 19(a)(2)(i) analysis).

[49] See supra notes 38–39 and accompanying text.

Moreover, proceeding to judgment without Massachusetts could also prejudice Defendant. Ruling that Defendant violated the DPPA strikes at the heart of Defendant's relationship with Massachusetts and would terminate their contract. Accordingly, such a ruling would "hinder [Defendant's] ability to resolve its contractual obligations with the [Commonwealth],"[50] including its ability to resolve remaining contractual issues. Additionally, there could be prejudice to Plaintiff, who, despite striking at Defendant, could find Massachusetts sprouting a new RMV renewal-registration contract with a different company much like a Hydra would grow new heads. Insofar as Massachusetts is not a party to this case and judgment against a named defendant can never bind a non-party,[51] then Massachusetts could enter into another contract with a different company.

The second factor—the extent to which any prejudice can be lessened or avoided by, protective provisions in the judgment, shaping the relief, or other measures—also weighs in favor of dismissal. There is no way to shape the relief sought by Plaintiff that would mitigate the prejudice to Massachusetts (and Defendant). Plaintiff seeks a declaration that Defendant's performance of its contract with Massachusetts violated the DPPA along with a permanent injunction enjoining Defendant from performing the contract.[52] Because a declaration that Defendant violated the DPPA is the same as holding that Massachusetts violated the law,

---

[50] Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 553 (4th Cir. 2006).

[51] See Provident Tradesmen Bank & Trust Co. v. Patterson, 390 U.S. 102, 110 (1968).

[52] Compl., 8–9 [#1].

Plaintiff's relief cannot be granted without prejudice to Massachusetts.[53] Plaintiff, moreover, does not offer any suggestions or alternative ways of shaping the relief so as to lesson or avoid prejudice.

The third factor—whether a judgment rendered in the person's absence will be adequate—mildly supports the same conclusion that Massachusetts is indispensable to this suit. This factor includes "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies."[54] On one hand, Plaintiff could have a resolution of the conduct of which Plaintiff currently complains. But, as explained above,[55] Plaintiff does not argue how Massachusetts would be prevented from engaging in extremely similar conduct with a different company after this case concluded. For this reason, an outcome in this case "could be inefficient as a further lawsuit could be necessary that would require relitigating nearly identical issues."[56]

The fourth factor—whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder—slightly weighs in favor of dismissal, or at worst, is inconclusive. Certainly, Plaintiff is correct that if the case is dismissed for failure to join Massachusetts, he cannot proceed in court. But Plaintiff's lack of all means of redress under "this factor is outweighed by the 'paramount importance' to be accorded to the [Commonwealth's] immunity

---

[53] See Laker Airways, Inc. v. British Airways, PLC, 182 F.3d 843, 849 (11th Cir. 1999) (finding prejudice to an absent party because the plaintiff could not prevail without demonstrating that the absent party failed to follow the law).

[54] Picciotto, 512 F.3d at 18 (quoting Provident Tradesmen, 390 U.S. at 111).

[55] See supra note 51 and accompanying text.

[56] Z & B Enters. v. Tastee-Freez Int'l, Inc., 162 Fed. Appx. 16, 21 (1st Cir. 2006).

from suit."[57] Such a result makes eminent sense here because Congress has provided that the Attorney General may bring proceedings to challenge state policies and practices that allegedly conflict with the DPPA.[58]

The factors considered all together weigh in favor of dismissal. The first factors weighs heavily in favor of dismissal, and the second and third factors also weigh in favor of dismissal because they indicate that Massachusetts is an indispensable party to this lawsuit. The fourth factor may be indeterminate if not slightly weigh in favor of dismissal. But, in addition to the four factors, various courts have emphasized that immunity places a heavy thumb on the scale for dismissal. Specifically, when a party is "'immune from suit, there is very little room for balancing of other factors set out in rule 19(b), because immunity may be viewed as one of those interests compelling by themselves.'"[59] Given the weight of the factors in favor of dismissal as well as Massachusetts's immunity from suit, Massachusetts is indispensable and this case must be dismissed.

      B.      <u>Plaintiff's Cross-Motion for Judgment on the Pleadings</u>

Because of this court's ruling regarding the indispensability of Massachusetts to this suit,

---

[57] <u>Seneca Nation of Indians v. New York</u>, 383 F.3d 45, 48 (2d Cir. 2004) (internal citation and quotation marks omitted); <u>see</u> <u>Hull</u>, 305 F.3d at 1025 ("With regard to the fourth factor, however, we have regularly held that the tribal interest in immunity overcomes the lack of an alternative remedy or forum for the plaintiffs." (Internal citations omitted)).

[58] <u>See</u> 18 U.S.C. § 2723(b). Therefore, insofar as the DPPA may be enforced by other means, Plaintiff's primary argument that this court's ruling would "decimate the DPPA" is incorrect. <u>See</u> Pl.'s Cross-Mot., 23 [#39].

[59] <u>Fluent v. Salamanca Indian Lease Auth.</u>, 928 F.2d 542, 548 (2d Cir. 1991) (quoting <u>Enterprise Mgmt. Consultants, Inc. v. United States ex. rel. Hodel</u>, 883 F.2d 890 894 (10th Cir. 1989)) (collecting other sources).

this court abstains from deciding the merits of Plaintiff's Cross-Motion beyond its arguments concerning Rule 19.  Plaintiff's Motion is therefore DENIED IN PART.

IV.     Conclusion

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings [#34] is ALLOWED IN PART, and Plaintiff's Cross-Motion for Judgment on the Pleadings [#37] is DENIED IN PART.

AN ORDER HAS ISSUED.

    /s/ Joseph L. Tauro
United States District Judge